**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ELLEN BETZ<br>2842 Bellview Drive<br>Bensalem, PA 19020<br><br>        Plaintiff,<br><br>    v.<br><br>TEMPLE HEALTH SYSTEMS<br>2450 W. Hunting Park Avenue<br>4th Floor, Philadelphia, PA 19129<br><br>        Defendant. | CIVIL ACTION NO:<br><br>COMPLAINT WITH JURY DEMAND |

## CIVIL ACTION COMPLAINT

Plaintiff Ellen Betz (hereinafter "Plaintiff"), by and through undersigned counsel, hereby complains as follows against Defendant Temple Health Systems (hereinafter "Defendant").

## INTRODUCTION

1.     Plaintiff has initiated this action to redress violations by Defendant of Title VII of the Civil Rights Act ("Title VII"), the Family Medical Leave Act ("FMLA") and the Pennsylvania Human Relations Act ("PHRA").  Plaintiff asserts that she was subjected to a sexually hostile working environment and then retaliated against for complaining about same. Furthermore, Plaintiff asserts that Defendant discriminated/retaliated against her for taking intermittent FMLA leave to care for her son and/or to prevent her from taking future FMLA leave to care for her son.

## JURISDICTION AND VENUE

2.     This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims herein arise under laws of the United States, Title VII and the FMLA.   This Court has jurisdiction over Plaintiff's state law claims because they are

supplemental to Plaintiff's underlying federal claims and arise out of the same transactions or occurrences, having the same common nucleus of operative facts pursuant to 28 U.S.C. § 1367(a).

3.      This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice.

4.      Pursuant to 28 U.S.C. §§ 1397(b)(1) and (b)(2), venue is properly laid in this judicial district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5.      Plaintiff has exhausted all administrative prerequisites to the filing of the instant Title VII and PHRA sexually hostile environment claims and by filing the instant action within 90 days of receiving a right-to-sue letter from the EEOC relating to said claims.  Plaintiff has outstanding requests for right to sue letters from the EEOC relating to her retaliatory discharge claims and her post-termination retaliation claims.

## PARTIES

6.      The foregoing paragraphs are incorporated herein as if set forth in full.

7.      Plaintiff is an adult individual with an address as set forth in the caption.

8.      Defendant is a business entity that does business in the state of Pennsylvania.

9.      At all times relevant herein, Defendant acted through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment/engagement with Defendant.

## FACTUAL BACKGROUND

10.     The foregoing paragraphs are incorporated herein as if set forth in full.

11.     Defendant hired Plaintiff in or around 2003, as a Registered Nurse at its Northeastern Hospital.

12.     In or around June of 2009, Defendant transferred Plaintiff to work as a Registered Nurse at Defendant's Jeanes Hospital.

13.     Plaintiff's son requires periodic hospitalization due to, among other medical conditions, cancer and seizures (hereinafter Plaintiff's son's "medical conditions").

14.     Plaintiff utilized intermittent FMLA leave one to three times per month as needed to care for her son due to his medical conditions.

15.     The work environment at Defendant's Jeanes Hospital was sexually offensive.

16.     Nurses would often conduct themselves in sexually offensive ways, which undermined the professional atmosphere of the hospital.

17.     The nurses sexually offensive conduct at work offended Plaintiff.

18.     Management at Defendant's Jeanes Hospital condoned the Nurses sexually offensive conduct.

19.     By way of example of the sexually offensive conduct, the nurses at Defendant's Jeanes Hospital would "joke" with each other by groping or pretending to grope each other's breasts and genitals.

20.     In or around April 2013, Plaintiff reported a series of sexually offensive photographs exemplifying the sexually offensive behavior identified above, to Brenna Woods, Defendant's Manager of Employee Relations.

21.     The day after Plaintiff's report to Manager Woods, Plaintiff discovered that her coworkers had found out about Plaintiff's report. Thereafter, Plaintiff's coworkers behaved with hostility towards Plaintiff in retaliation for Plaintiff's report of their sexually offensive conduct.

3

22.     For instance, Plaintiff's coworkers incessantly referred to Plaintiff as a *"rat"* and a *"snitch."*

23.     Plaintiff also received threatening anonymous voicemails stating *"You think you're so smart. You picked the wrong side. When we want someone gone, they're gone. You're next."*

24.     The coworkers also harassed Plaintiff by, for instance, throwing Plaintiff's lunch in the garbage and pouring cranberry juice on it.

25.     In or around May of 2013, Plaintiff reported to Defendant's Human Resources Representative, Jackie Naardi, the retaliation to which she was being subjected for having made her report to Manager Woods of the sexually hostile work environment.

26.      Thereafter, the retaliation continued in the form of harassment by Defendant's staff and management.

27.     In or around June of 2013, Plaintiff complained about the continued retaliation to Manager Woods and to Defendant's corporate office.

28.     In or around July 2013, Plaintiff applied for a position at another hospital within Defendant's network.

29.     On or around August 6, 2013, Plaintiff was accused by Defendant's Nurse Manager Danielle Meinel of committing a medical error approximately one month earlier.

30.     Plaintiff thereafter demonstrated to Manager Meinel that Plaintiff did not commit the alleged error (or any other error); Manager Meinel was satisfied with Plaintiff's proofs and informed Plaintiff of same.

31.     On or around September 9, 2013, Defendant offered Plaintiff a transfer to another hospital within Defendant's network of hospitals.

32.     The next day, however, Plaintiff was informed she was disqualified for the transfer due to a written discipline she had received for the alleged June medical error, which Plaintiff had already satisfactorily disproven.

33.     On or around December 29, 2013, as part of a campaign to retaliate against Plaintiff for her above described reports to management, Plaintiff was again accused of committing a medical error.

34.     Plaintiff did not commit the medical error referenced in the preceding paragraph, and presented proof to that effect.

35.     Indeed, later that same day, Plaintiff's supervisor, Karen Finklestein, told Plaintiff that the issue had been closed and that Plaintiff would not hear about it again; another supervisor, Linda Krouse, was present during this conversation.

36.     On or around January 7, 2014, Plaintiff was informed that the alleged medical error from on or around December 29, 2013, had been reopened.

37.     On or around January 10, 2014, Plaintiff told Manager Woods that she planned to file a charge of discrimination with the EEOC for sexual harassment, in response to the sexual harassment and retaliation she had experienced and continued to experience due to her May and June complaints of sexual harassment and retaliation.

38.     On or around January 12, 2014, Plaintiff informed Elizabeth Donahue, Defendant's Director of Human Resources, about her intent to file a charge of discrimination with the EEOC.

39.     On or around January 15, 2014, due to severe anxiety and stress resulting from the harassment she was experiencing at work, Plaintiff received a note from her physician, excusing her from work until January 20, 2014.

40.     Plaintiff informed Manager Woods of her need for medical leave.

41.     On or around January 20, 2014, Plaintiff's son was admitted to the hospital due to his medical conditions.

42.     On or around January 20, 2014, Plaintiff informed Manager Woods of her need for medical leave to take care of her son in the hospital.

43.     Before Plaintiff could give Defendant medical documentation for her absences, Manager Woods demanded Plaintiff return to work immediately for a meeting.

44.     At the meeting referenced in the preceding paragraph, Defendant placed Plaintiff on indefinite suspension for the alleged December 29, 2013 medical error, which again Plaintiff did not commit (and which Plaintiff demonstrated to Ms. Finklestein's satisfaction she did not commit).

45.     Plaintiff filed an EEOC/PHRC charge of discrimination on February 5, 2014.

46.     The suspension lasted a month, during which the Plaintiff could not get any update as to her work status or the status of the incident investigation.

47.     On February 21, 2014, Defendant fired Plaintiff.

48.     Plaintiff filed an EEOC/PHRC charge for retaliatory discharge on or around July 14, 2014.

49.     Thereafter, Plaintiff made numerous applications for new employment elsewhere.

50.     On at least two separate occasions, Defendant maliciously and with a retaliatory intent provided a bad reference about Plaintiff to prospective employers.

51.     Plaintiff applied for a position with Bernadette Appiott as a private nurse and identified Defendant as a prior employer.

52.     When Ms. Appiott contacted Respondent, she spoke with John Lavery who stated that "it wouldn't be wise for [Ms. Appiott] to hire [Plaintiff] as [Plaintiff] created a lot of trouble while working there." Mr. Lavery further stated that "[Plaintiff] was a liability, and not someone he would recommend to anyone."

53.     Plaintiff was not offered the position with Bernadette Appiott.

54.     Plaintiff also applied for a position with Susan Sommers as a private nurse and identified Defendant as a prior employer.

55.     When Ms. Sommers contacted Defendant, she spoke with Mr. Lavery who stated that "it would not be in [Ms. Sommers' best interest to hire [Plaintiff]." He went on to say that Plaintiff was a "trouble maker". Mr. Lavery further stated that "[Plaintiff] had become a problem most recently and that [Plaintiff] was trouble and that he would not recommend [Ms. Sommers] hiring her."

56.     Plaintiff was not offered the position with Susan Sommers.

57.     Plaintiff filed an EEOC/PHRC charge for retaliatory post-termination conduct on January 2, 2015.

58.     Defendant's reasons for firing Plaintiff were pretext.

59.     In fact, Defendant fired Plaintiff for complaining about sexual harassment and/or for complaining to the EEOC and/or for taking intermittent FMLA leave to care for her son and/or to prevent Plaintiff from taking FMLA leave to care for her son, and continued to retaliate against Plaintiff by providing negative references to prospective employers.

60.     As a result of Defendant's unlawful actions, Plaintiff has suffered damages.

## COUNT I
## Violation of Title VII of the Civil Rights Act of 1964
### (Sexual Harassment & Hostile Work Environment)

61.     The foregoing paragraphs are incorporated herein as if set forth in full.

62.     Plaintiff was subjected to sexually offensive behavior in Defendant's workplace.

63.     Defendant failed to remedy the sexually offensive work environment to which Plaintiff was exposed even after having notice, through Plaintiff's complaints, of said behavior which occurred in its workplace.

64.     Any reasonable person would have felt that he or she was being subjected to a sexually hostile work environment due to Defendant's conduct in failing to effectively remedy the pervasive and severe sexual harassment of which Plaintiff was exposed.

65.     These actions constitute violations of Title VII.

## COUNT II
## Violation of Title VII of the Civil Rights Act of 1964
### (Retaliation)

66.     The foregoing paragraphs are incorporated herein as if set forth in full.

67.     Plaintiff's complaints regarding sexual harassment constitute protected activities pursuant to Title VII.

68.     Defendant fired Plaintiff for complaining about sexual harassment and/or for filing a charge of discrimination with the EEOC.

69.     Furthermore, Defendant sabotaged Plaintiff's search for new employment by provided negative references to prospective employers.

70.     These actions constitute violations of Title VII.

## COUNT III
## Violations of the FMLA
### (Interference)

8

71.     The foregoing paragraphs are incorporated herein as if set forth in full.

72.     Plaintiff was an eligible employee under the definitional terms of the FMLA.

73.     At all times relevant hereto, Plaintiff was employed with Defendant for at least twelve (12) months.

74.     Further, Plaintiff had at least 1,250 hours of service with Defendant during the twelve (12) months prior to the commencement of her medical leave of absence.

75.     Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for twenty (20) or more calendar workweeks in the current or proceeding calendar year.

76.     Plaintiff required time off from work due to her son's medical condition.

77.     Plaintiff's son's medical condition constituted a serious health condition within the meaning of the FMLA.

78.     Plaintiff was entitled to receive leave under the FMLA for a total of twelve (12) workweeks of leave and/or intermittent leave, and Defendant was not permitted to interfere with Plaintiff's rights under the FMLA.

79.     Defendant interfered with Plaintiff's FMLA rights by firing her for having taken leave that Defendant designated and/or should have designated and treated as FMLA protected leave.

80.     Defendants interfered with Plaintiff's FMLA rights by firing her to prevent her from taking further FMLA leave.

81.     As a result of Defendants' unlawful actions, Plaintiff has suffered damages.

## COUNT IV
## Violations of the FMLA
## (Retaliation)

82.     The foregoing paragraphs are incorporated herein as if set forth in full.

83.     Plaintiff was entitled to receive leave under the FMLA for a total of twelve (12) workweeks of leave and/or intermittent leave, and Defendant was not permitted to retaliate against Plaintiff for exercising his rights under the FMLA.

84.     Defendant retaliated against Plaintiff by firing Plaintiff for taking and requesting FMLA-qualifying absences.

85.     Defendant's retaliatory actions constitute unlawful acts under the FMLA.

86.     Defendant's violation of the FMLA was both willful and intentional.

87.     Defendant's unlawful conduct caused financial harm and other damage to Plaintiff.

## COUNT V
## Violations of the PHRA
## (Sexual Harassment & Hostile Work environment)

88.     The foregoing paragraphs are incorporated herein as if set forth in full.

89.     Plaintiff was subjected to sexually offensive behavior in Defendant's workplace.

90.     Defendant failed to remedy the sexually offensive work environment to which Plaintiff was exposed even after having notice, through Plaintiff's complaints, of said behavior which occurred in its workplace.

91.     Any reasonable person would have felt that he or she was being subjected to a sexually hostile work environment due to Defendant's conduct in failing to effectively remedy the pervasive and severe sexual harassment of which Plaintiff was exposed.

92.     These actions constitute violations of the PHRA.

**COUNT VI**
**Violations of the PHRA**
**(Retaliation)**

93.     The foregoing paragraphs are incorporated herein as if set forth in full.

94.     Plaintiff's complaints regarding sexual harassment constitute protected activities pursuant to Title VII.

95.     Defendant fired Plaintiff for complaining about sexual harassment, and/or for filing a charge of discrimination with the EEOC.

96.     Furthermore, Defendant sabotaged Plaintiff's search for new employment by provided negative references to prospective employers.

97.     These actions constitute violations of the PHRA.

**COUNT VII**
**Violations of the Family and Medical Leave Act**
**(Retaliation – Wrongful Termination)**

98.     The foregoing paragraphs are incorporated herein as if set forth in full.

99.     Defendants retaliated against Plaintiff by firing her for having taken leave that Defendants designated and/or should have designated and treated as FMLA protected leave.

100.    As a result of Defendants' unlawful actions, Plaintiff has suffered damages.


**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.      Defendant is to be prohibited from continuing to maintain its illegal policy, practice, or custom of permitting its employees to be subjected to sexual harassment and/or a sexually hostile work environment and retaliating against employees for complaining about same, and is to be ordered to promulgate an effective policy against such sexual harassment and retaliation, and to adhere thereto;

11

B.      Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost and future earnings and benefits;

C.      Plaintiff is to be awarded punitive damages (as permitted by applicable law) in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious, and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be awarded damages for emotional distress and/or pain and suffering (as permitted by applicable law) and is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal law;

F.      Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**SWARTZ SWIDLER, LLC**

*/s/ Daniel Horowitz*
Daniel Horowitz, Esq.
1101 Kings Highway North
Suite 402
Cherry Hill, NJ 08034
(856) 685-7420
(856) 685-7417 Fax

Dated:  January 28, 2014

## **DEMAND TO PRESERVE EVIDENCE**

All Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's cause of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.